# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CT-01088-SCT

*GARY W. MORRISON*

*v.*

*MISSISSIPPI DEPARTMENT OF HUMAN SERVICES*

## <u>ON WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 06/12/2001 |
| TRIAL JUDGE: | HON. JOHN C. ROSS, JR. |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | TERRY LYNN WOOD |
| ATTORNEY FOR APPELLEE: | VICKIE R. MITCHELL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AS TO THE EDUCATIONAL EXPENSES ISSUE AND REVERSED IN PART AS TO ALL OTHER ISSUES; THE JUDGMENT OF THE CHANCERY COURT OF ALCORN COUNTY OF WILLFUL CONTEMPT OF COURT IS VACATED; AND THE JUDGMENT OF THE CHANCERY COURT OF ALCORN COUNTY IS REVERSED AND RENDERED AS TO THE EDUCATIONAL EXPENSES ISSUE - 01/15/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Gary W. Morrison was found in contempt of a child support modification order by the Alcorn County Chancery Court. He appealed on the basis that he had not been served with process. The appeal

was assigned to the Court of Appeals, which affirmed as to the general validity of the judgment and reversed and rendered as to the portion of the judgment requiring Morrison to pay educational expenses for a master's degree. *Morrison v Miss. Dep't of Human Servs*., 852 So. 2d 578 (Miss. Ct. App. 2002).[1] This Court granted certiorari to consider whether Morrison's due process rights were violated and whether the Court of Appeals erred in determining his attack on the 1994 order was a collateral attack as opposed to a direct attack.

## FACTS AND PROCEEDINGS IN
## THE TRIAL COURT AND THE COURT OF APPEALS

¶2.     Gary W. Morrison and Annie Windom had a child, Christopher, in 1974. Pursuant to an order of filiation entered in 1988, Morrison admitted paternity and agreed to pay child support of $25 per week, increased to $50 per week several months later. Morrison also agreed to share educational expenses, including those incurred in Christopher's obtaining a four-year college degree.

¶3.     In 1993 and after Christopher had begun attending college, Windom filed a petition for contempt and modification. A summons for Morrison was issued by the chancery court clerk on January 4, 1994, but the record does not contain a return of service and the certified copy of the docket book does not contain an entry indicating there was such a return.

¶4.     A hearing was held, in the absence of both Morrison and his counsel, on January 19, 1994. The chancellor found Morrison in willful contempt; awarded a judgment of $11,683.04 to Windom for past-due child support, medical expenses and tuition arrearages; increased child support to $125 per week until

[1]Southwick, P.J., wrote for the Court of Appeals. McMillin, C.J., Thomas, Irving, Myers and Chandler, JJ., concurred. Brantley, J., dissented with separate written opinion joined by King, P.J., Bridges and Lee, JJ.

Christopher obtained a master's degree or ceased to be enrolled full-time; "sentenced" Morrison to ninety (90) days in jail, held in abeyance with a lump sum payment; and ordered Morrison to pay attorney's fees and costs. That order contains the language "process having been served on the Defendant [Morrison] in the manner and for the time required by law and the Defendant appearing not. . . ." In February 1994, the Mississippi Department of Human Services (MDHS) filed a petition in Georgia under the Uniform Reciprocal Enforcement of Support Act.

¶5.    Christopher apparently left college in April 1999, without obtaining his degree. In October 1999, a notice was issued to Morrison for the hearing on amending the order for withholding to set out arrearages only in the amount of $50 per week. In 2000, a second petition for contempt was filed and Morrison, who was apparently this time served with process, responded with a motion to dismiss, asserting that the previous judgment was void because he was never served. The chancellor denied the motion to dismiss and later entered an order finding Morrison in contempt; awarding a judgment of $49,693.05[2] for arrearages, to be paid off at $500 per month; and "sentenced" Morrison to ninety (90) days in jail, held in abeyance upon payment of a $1,500 lump sum. Morrison appealed, and the appeal was assigned to the Court of Appeals, which affirmed as to the general validity of the judgment, but reversed and rendered as to the requirement that Morrison pay for expenses related to Christopher obtaining a master's degree. Subsequently, Morrison filed a petition for writ of certiorari, which was granted by this Court.

## ANALYSIS

---

[2]The Court of Appeals cites the amount as $46,693. *Morrison*, 852 So. 2d at 580 (¶ 7).

3

¶6.     Morrison asserts that the Court of Appeals' decision is erroneous and is in conflict with prior decisions of this Court. Specifically, Morrison argues that his due process rights have been violated and that the Court of Appeals erred in determining his attack on the 1994 order was a collateral attack as opposed to a direct attack.

¶7.     Child support modification and contempt actions fall under Miss. R. Civ. P. 81(d) and are "triable 7 days after completion of service of process in any manner other than by publication. . . ." Miss. R. Civ. P. 81(d)(2). Further, a Rule 81 summons must set out a specific time and place the defendant is to appear. Miss. R. Civ. P. 81(d)(5). A Rule 81 summons was issued in this case directing Morrison to appear at a time and date certain, but there is no proof he was ever served.

¶8.     Service of a Rule 81 summons by mail can be done either under Miss. R. Civ. P. 4(c)(3) or (5).

(c) Service.

(3) By Mail.
(A) A summons and complaint may be served upon a defendant of any class referred to in paragraph (1) or (4) of subdivision (d) of this rule by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to Form 1-B and a return envelope, postage prepaid, addressed to the sender.
(B) *If no acknowledgment of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint may be made in any other manner permitted by this rule.*
(C) Unless good cause is shown for not doing so, the court shall order the payment of the costs of personal service by the person served if such person does not complete and return within 20 days after mailing, the notice and acknowledgment of receipt of summons.
(D) The notice and acknowledgment of receipt of summons and complaint shall be executed under oath or affirmation.

. . .

4

(5) Service by Certified Mail on Person Outside State. In addition to service by any other method provided by this rule, a summons may be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested. Where the defendant is a natural person, the envelope containing the summons and complaint shall be marked "restricted delivery." *Service by this method shall be deemed complete as of the date of delivery as evidenced by the return receipt or by the returned envelope marked "Refused."*

Miss. R. Civ. P. 4(c)(3),(5) (emphasis added).

¶9.　Additional return requirements are set out in Rule 4(f):

(f) Return. The person serving the process shall make proof of service thereof to the court promptly. If service is made by a person other than a sheriff, such person shall make affidavit thereof. If service is made under paragraph (c)(3) of this rule, return shall be made by the sender's filing with the court the acknowledgment received pursuant to such subdivision. If service is made under paragraph (c)(5) of this rule, the return shall be made by the sender's filing with the court the return receipt or the returned envelope marked "Refused". Failure to make proof of service does not affect the validity of the service.

Miss. R. Civ. P. 4(f).

¶10.　There is no return for proof of service in the record, only the blank proof of service form. The clerk's docket book does not indicate any return ever being received or filed. Also, the record is unclear as to which provision of Rule 4 under which service was even attempted.

¶11.　Morrison asserts that since he attacked the 1994 order upon first learning in 2000 of its existence, his action is a direct attack on the order. The Court of Appeals found differently:

Morrison waited six years to attack the 1994 contempt and modification order. This constitutes a collateral attack on the former judgment. In a direct attack on a decree it is, of course, competent to show that there was no service of summons, but in a collateral attack, as is here made, unless the record affirmatively shows to the contrary, all jurisdictional facts are conclusively presumed to have existed, including the proper service of process. It is not enough that the return of service is merely missing from the record -- and that is all that is shown here.

5

*Morrison*, 852 So. 2d at 581 (¶ 11) (citing *Bray v. City of Meridian*, 723 So. 2d 1200, 1204 (Miss. Ct. App. 1998), quoting *Whitley v. Towle*, 163 Miss. 418, 425-26, 141 So. 571, 572 (1932)).

¶12.    The Court of Appeals further found that Morrison could not successfully make a collateral attack.

> To set aside the six-year old judgment in 2000, Morrison needed to make an affirmative showing of failure to serve. Among such affirmative showings would be a returned envelope with the summons showing that it was undeliverable, or a return of service from a process server that the defendant could not be found or that the address was incorrect. An "affirmative" showing of failure to serve as required for a collateral attack does not mean simple silence in the record. That is not an "affirmative" -- defined as "that which declares positively, . . . the opposite of negative." BLACK'S LAW DICTIONARY 60 (6th ed. 1990). If declaring affirmatively is the opposite of declaring negatively, then silence is in the precise middle. Nothing is declared at all. The sounds of silence are not the equivalents of declarations.

*Morrison*, 852 So. 2d at 581(¶ 12). The Court of Appeals likewise pointed out that the issue would be moot if the docket entry had revealed a return. Further, the Court of Appeals' majority opinion stated that "as the passage of time from a judgment continues, it may become increasingly difficult to prove the validity of such matters as service." *Id*. at 582 (¶ 16). Both Morrison and the Court of Appeals cite various other cases, some of which are addressed herein.

¶13.    The Court of Appeals cited *Bray* and *Whitley* as controlling. However, we disagree. In *Bray*, the Court of Appeals held that Mr. Bray received adequate notice where his wife was served, as evidenced by a certified mail return receipt, in a matter concerning their joint property. There is no evidence of a return of any kind in the case sub judice, which clearly distinguishes this case from *Bray*. Further, the emphasis in *Whitley* and other cases regarding the collateral vs. direct attack issue is somewhat misplaced. The record supports Morrison's assertion that he attacked the judgment upon learning of it. To then conclude that because Morrison waited so long that he could not successfully challenge service of process

is improper. Morrison could not have been waiting to attack a judgment of which he was unaware.

Further, even if the attack is collateral, the standard is that jurisdictional facts are presumed to have existed *unless* the record affirmatively shows to the contrary. *See Whitley,* 141 So. at 572. *See also **In the Matter of the Will of Case v. Case***, 246 Miss. 750, 150 So. 2d 148 (1963); ***Federal Reserve Bank of St. Louis v. Wall***, 138 Miss. 204, 105 So. 5 (1924) . Also, the nature of the attack does not preclude a finding that a judgment is void.

What is presented in the instant case is a collateral attack on the decree under Rule 60. The claim is that the judgment is void as against public policy. This Court has stated that a judgment is void

7

> only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.

***Miss. Dep't of Human Servs. v. Shelby,*** 802 So.2d 89, 96 (Miss. 2001) (citations omitted).

¶14.    There exists a constitutional right to due process. However, the Court of Appeals' majority opinion evidently concludes that the lack of a return cannot constitute an affirmative showing of failure to serve. If that were the case, a defendant would never need to actually be served so long as no return was filed. Also, as stated by Judge Brantley in his dissent, the fact that the proper summons was *issued* in no way indicates that the defendant was *served*. Further, the majority's analysis contradicts Miss. R. Civ. P. 4(c)(3) and (5), which are quoted above and establish that no acknowledgment or return receipt of service by mail means no service and that the service can then be attempted by other means.

8

¶15.    The record clearly reveals that here the return was not received and then lost or misplaced.  Not only is there no return in the record, but there is no entry in the docket book indicating that there ever was a return.  At the May 29, 2001, hearing which resulted in the chancellor's subsequent entry of the judgment which is the subject of today's appeal, Morrison testified that he was not served with process.  The plaintiff did not introduce any evidence to contradict that evidence other than a copy of the order containing the standard form language of "process having been served on the Defendant in the manner and for the time required by law and the Defendant appearing not. . ." without specifying how or when the defendant was served.  No money was ever collected on the judgment.  Windom testified that she had never contacted Morrison's mother, who lived near her, to inquire as to Morrison's address; and, there were several discrepancies in the addresses which Windom asserted as belonging to Morrison.  Thus, unlike the record in *Whitley*, the record before us today affirmatively shows the existence of facts more than sufficient to rebut the presumption of jurisdiction.  In other words we are unable to find that "all jurisdictional facts are conclusively presumed to have existed," because indeed the record "affirmatively shows to the contrary."

¶16.    This Court has found a violation of due process where a Rule 4 alias summons was served rather than a Rule 81 summons.  *See Powell v. Powell,* 644 So. 2d 269 (Miss. 1994).  This Court has also held that jurisdiction is not obtained by a defendant's informally becoming aware that a suit has been filed and that a complete absence of service of process offends due process and cannot be waived.  *Mansour v. Charmax Indus., Inc.,* 680 So. 2d 852, 854-55 (Miss. 1996).

¶17.    This Court has previously addressed a similar issue in  *Hamm v. Hall,* 693 So. 2d 906 (Miss. 1997).  In *Hamm*, the out-of-state defendant, Hamm, was served by publication in a divorce action with

9

a copy of the summons mailed by first-class mail to his supposed out-of-state address. Hamm did not file an answer or enter an appearance, and a judgment was entered against him imposing child support. Later, the plaintiff filed a contempt and modification action, which Hamm moved to strike, asserting that the trial court lacked personal jurisdiction over him in the original action and that the child support order was void. The chancellor denied the motion, and on appeal this Court held that (1) the trial court lacked jurisdiction over Hamm in the original action; (2) the fact that Hamm made child support payments after he received the divorce decree did not result in waiver of his objection that such order was void; and, (3) that Hamm was not required to take an interlocutory appeal. *Hamm* had an additional factor of service by publication, but it was service by publication *and* the mailing of the summons. Here, Morrison did not even get the benefit of service by publication. In *Hamm*, this Court found service by publication under Miss. R. Civ. P. 4(c)(4)(C) did not authorize the rendition of a personal judgment against the defendant without his appearance. *See* *Noble v. Noble,* 502 So. 2d 317 (Miss. 1987). A valid judgment imposing a personal obligation or duty in favor of the plaintiff may only be entered by a court having personal jurisdiction over the defendant. Personal jurisdiction depends on the presence of reasonable notice to the defendant and a sufficient connection between the defendant and the forum. *See* *Kulko v. California Superior Court,* 436 U.S. 84, 91, 98 S.Ct. 1690, 56 L. Ed. 2d 132 (1978).

¶18.     In the case sub judice, there is no suggestion that Morrison waived any due process violation. The trial court alluded to the fact that Morrison must have had knowledge of the judgment because repeated attempts were made to enforce it. We disagree with that suggestion. The record indicates those repeated attempts were unsuccessful, so there is no logical way that these unsuccessful efforts could establish notice.

However, even if Morrison knew about the judgment or even paid child support during that time period, it would be of no moment inasmuch as the judgment is void.

¶19.    The Court of Appeals' decision conflicts not only with the aforementioned cases, but also with previous decisions of the Court of Appeals. The majority "merely notes" the inconsistency with *Reichert v. Reichert,* 807 So. 2d 1282 (Miss. Ct. App. 2002), which is also relied upon in the dissent. In *Reichert,* a petition for contempt was filed against the out-of-state defendant, Wallace Reichert, in a divorce action. Reichert was personally served with a notice of hearing, indicating the date and time of the hearing, and a copy of the petition. Reichert denied that he received the notice. The record did not reflect that a summons was issued, but the sworn return stated that Reichert was served with a copy of the summons and complaint. In its analysis, the Court of Appeals found that the lack of a summons in the record "affirmatively contradicts the existence of a summons. . . ." *Id.*, at 1288. The Court of Appeals held there that, although the chancery court had personal jurisdiction over Reichert in the contempt matter, sufficient evidence contradicted any presumption that Reichert had been served with a summons; the notice of hearing did not satisfy the requirements for a summons; and, the judgment was void.

¶20.    Another Court of Appeals decision, *Sanghi v. Sanghi*, 759 So. 2d 1250 (Miss. Ct. App. 2000), is also noteworthy. In *Sanghi,* the court held that the former husband did not receive adequate notice of a petition of contempt when he only received a notice of court setting from the court administrator. There was no question that Sanghi received the notice because he contacted the court administrator and successfully changed the date of the hearing, but the Court of Appeals held that such notice did not meet the requirement that the defendant be served with a Rule 81 summons.

¶21.    This Court and the Court of Appeals have found due process violations where, absent waiver, service was made or notice was provided, but not under Rule 81.  Here, Morrison argues that he received no notice of any kind.  Under the applicable law, we find that the record supports Morrison's claim that his due process rights were violated and that the judgment of contempt is thus void.  We further find that the Court of Appeals' decision affirming the  Chancery Court of Alcorn County's judgment of contempt, as to all issues except the educational expenses, was improper and is reversed.  We vacate the chancery court's contempt judgment and reverse and render its judgment requiring Morrison to pay educational expenses for a master's degree.

¶22.    **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AS TO THE EDUCATIONAL EXPENSES ISSUE AND REVERSED IN PART AS TO ALL OTHER ISSUES; THE JUDGMENT OF THE CHANCERY COURT OF ALCORN COUNTY OF WILLFUL CONTEMPT OF COURT IS VACATED; AND THE JUDGMENT OF THE CHANCERY COURT OF ALCORN COUNTY IS REVERSED AND RENDERED AS TO THE EDUCATIONAL EXPENSES ISSUE.**

**PITTMAN, C.J., SMITH AND WALLER, P.JJ., COBB, EASLEY, GRAVES AND DICKINSON, JJ., CONCUR.  DIAZ, J., NOT PARTICIPATING.**